**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON**

**CIVIL ACTION NO. 10-168-DLB**

**ANITA HENSON**                                                                                             **PLAINTIFF**

vs.                     **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                           **DEFENDANT**

\*   \*   \*   \*   \*   \*   \*

This action was brought pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Anita Henson applied for supplemental security income (SSI) on September 20, 2007. (Tr. 77-80). At the time of filing, Plaintiff was 44 years old and alleged a disability onset date of January 1, 2007. (Tr. 77). Plaintiff alleges that she is unable to work due to emphysema, chronic obstructive pulmonary disease (COPD) and headaches. (Tr. 102, 108). Her application was denied initially and again on reconsideration. (Tr. 47-53). At Plaintiff's request, an administrative hearing was conducted via video teleconference on April 3, 2009. (Tr. 22-42). On July 29, 2009, Administrative Law Judge (ALJ) Gloria B. York ruled that Plaintiff was not disabled and therefore not entitled to SSI.

1

(Tr. 12-19). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 23, 2010. (Tr. 1-3).

On May 19, 2010, Plaintiff filed the instant action. (Doc. # 1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 9, 10).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant still performs substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether a significant number of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since applying for benefits on September 20, 2007. (Tr. 14). At Step 2, the ALJ found that Plaintiff had two severe impairments: COPD and a generalized anxiety disorder. (Tr. 14). Plaintiff also alleged disability because of headaches. However, the ALJ found that the headaches do not impose more than a slight or minimal limitation in the Plaintiff's ability to perform basic work-related activities on a sustained basis and are not "severe" within the meaning of the Social Security Act. (Tr. 14). At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15). Specifically, the ALJ evaluated Plaintiff's COPD under Listing 3.02 (Chronic Pulmonary Insufficiency) and generalized anxiety disorder under Listing 12.06 (Anxiety Related Disorders) and concluded that Plaintiff's condition did not meet or equal the necessary criteria under either

listing. (Tr. 15).

At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform a limited range of light work. (Tr. 15). Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently and stand and walk six hours out of an eight hour workday. (Tr. 15). She is limited to a clean air environment with no exposure to respiratory irritants. (Tr. 15). Since Plaintiff also suffers from generalized anxiety disorder, the ALJ found that she has a moderate limitation (occasionally occurring) in her ability to tolerate work stresses and interact with others. (Tr. 15). Furthermore, she has a slight to moderate limitation in her ability to maintain attention and concentration. (Tr. 15). Based upon these findings, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 18).

At Step 5, the ALJ found that Plaintiff was born on March 2, 1963 and was 44 years old, which is defined as a "younger individual," on the date the application was filed. (Tr. 18). *See* 20 C.F.R. § 416.963. The ALJ also found that Plaintiff has a limited education and is able to communicate in English. (Tr. 18). Considering the Plaintiff's age, education, work experience and residual functional capacity, the ALJ determined that a significant number of jobs exist in the national economy that Plaintiff can perform. (Tr. 18). ALJ York therefore concluded that Plaintiff has not been under a disability within the meaning of the Social Security Act since Plaintiff's application date of September 20, 2007. (Tr. 19).

**C.    Analysis**

Plaintiff raises several arguments on appeal. First, Plaintiff contends the ALJ failed

4

to give appropriate weight to the opinion of treating physician Dr. Clement Zulueta[1] and failed to give adequate reasoning for refusing to accept his opinion. Second, Plaintiff argues that the ALJ did not consider the combined effects of her impairments. Third, Plaintiff argues the ALJ did not consider the durational requirement of substantial gainful activity. Finally, Plaintiff alleges the ALJ erred in finding her impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The Court will address each of these challenges in turn.

### 1. The ALJ Did Not Improperly Reject the Opinion of Treating Physician, Dr. Clement Zueleta

Plaintiff argues that the ALJ failed to give deference to the opinion of treating physician Dr. Zulueta. "Generally, the opinions of treating physicians are given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). However, treating physicians' opinions are only given such deference when supported by objective medical evidence and consistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see* C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the ALJ concludes that either criterion is not satisfied, she applies the following factors in determining how much weight to give a treating physician's opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source . . . ." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d at 544.

---

[1] In Plaintiff's Memorandum in Support of Motion for Summary Judgment (Doc. # 9-2), she refers to Dr. Zulueta as a "treating psychiatrist." However, the record reveals that Dr. Zulueta is a general practitioner, not a psychiatrist or mental health specialist. (Tr. 32, 36, 394, 400).

"'The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician.'" *Warner*, 375 F.3d at 390 (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). Accordingly, an ALJ may elect not to give controlling weight to a treating physician's opinion, as long as she provides "good reasons" for so doing. *Wilson*, 378 F.3d at 544; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

In this case, the ALJ rejected the restrictions included in the March 19, 2009 physical RFC assessment of Dr. Zulueta.[2] (Tr. 17). Dr. Zulueta opined that Plaintiff could only walk one city block without rest or severe pain. (Tr. 436). He also found that Plaintiff could only sit for fifteen minutes at a time and stand for ten minutes at a time. (Tr. 436). Furthermore, he found that Plaintiff could only sit and stand/walk for less than two hours total in an eight hour day. (Tr. 438). He noted that Plaintiff could occasionally bend, squat, climb and reach above shoulder level but never crawl. (Tr. 494). Dr. Zulueta believed that Plaintiff would need to take unscheduled breaks during an eight hour working day but was "not sure" how often Plaintiff would require these breaks. (Tr. 438). He stated that Plaintiff could frequently lift and carry ten pounds, occasionally lift and carry twenty pounds, but never lift or carry fifty pounds. (Tr. 439). Finally, Dr. Zulueta opined that Plaintiff's impairments were likely to produce "good days" and "bad days," but stated it was "undetermined" how often Plaintiff would be absent from work as a result of her impairments or treatment. (Tr. 439). The ALJ found these restrictions to be inconsistent with Dr. Zulueta's own treatment notes

---

[2] While the ALJ found no weight would be given to Dr. Zulueta's physical RFC assessment, it is important to note that the ALJ did not totally reject Dr. Zulueta's conclusions. In fact, the ALJ incorporated part of Dr. Zulueta's assessment regarding the Plaintiff's lifting and carrying capacity into the Plaintiff's RFC. (Tr. 15, 439). Furthermore, the ALJ actually included a more restrictive non-exertional limitation in Plaintiff's RFC than Dr. Zulueta. Dr. Zulueta opined that Plaintiff had only a mild restriction of activities involving exposure to dust, fumes and gas. (Tr. 494). However, the ALJ found that Plaintiff could only work in a clean air environment with no exposure to respiratory irritants. (Tr. 15).

6

and the other medical evidence of record. (Tr. 17).

First, the ALJ noted that Dr. Zulueta's assessment was inconsistent with his own treatment records of the Plaintiff. (Tr. 17). The record establishes that Plaintiff began treating with Dr. Zulueta in July 2004. (Tr. 394). She treated with him regularly for generalized anxiety disorder and sometimes headaches. (Tr. 342-94). He regularly prescribed Xanax for her anxiety and Lortab for her headaches. (Tr. 342-94). However, from July 2004 through November 2009, Plaintiff only complained of respiratory problems on four occasions. In November 2004, Dr. Zulueta diagnosed Plaintiff with acute bronchitis. (Tr. 388). In July 2006, he diagnosed her with sinusitis. (Tr. 356-57). In September 2007, he diagnosed her with an upper respiratory infection. (Tr. 342). Finally, in July 2009, Plaintiff complained of a cough, but the record does not establish whether Dr. Zulueta diagnosed her with a respiratory infection. (Tr. 492). Besides those four instances, Dr. Zulueta's treatment notes reflect that Plaintiff's respiratory symptoms were negative and are otherwise devoid of any objective evidence documenting respiratory problems.

Moreover, Dr. Zulueta's treatment notes do not assess any restrictions on Plaintiff's daily activities. The absence of physical restrictions from a treating physician constitutes substantial evidence that an impairment is not disabling. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005) (quoting *Maher v. Sec'y of Health & Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989)). Indeed, Dr. Zulueta's records document very little other than a diagnosis and prescribed medication. Furthermore, Dr. Zulueta's physical RFC assessment fails to point to any particular records in Plaintiff's medical history to support his conclusions. The regulations state that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings,

7

the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs.").

Additionally, the ALJ found that Dr. Zulueta's assessment contradicts the weight of the medical evidence of record. (Tr. 17). While the objective medical evidence clearly establishes that Plaintiff has had recurrent respiratory issues related to her COPD, it fails to support the extreme physical restrictions assessed by Dr. Zulueta. In 2003, Plaintiff was hospitalized three times for bronchitis and received respiratory therapy. (Tr. 175-77, 227-36, 276). However her chest X-ray showed clear lungs with no pleural effusion, infiltrate or pneumonia. (Tr. 177). In September 2005, Plaintiff presented to the emergency room complaining of a cough and fever. (Tr. 312). It was noted that her respirations were unlabored, and a chest X-ray revealed that her lungs appeared well aerated with no gross evidence of segmental or subsegmental infiltrative pathology. (Tr. 315). She was diagnosed with bronchitis and an upper respiratory infection, given medication and discharged. The ALJ also noted that, in 2005, Plaintiff underwent pulmonary function tests; however, both times the results were deemed invalid due to Plaintiff's poor effort. (Tr. 17, 155-56). In September 2007, Plaintiff presented to the emergency room complaining of cough and congestion. (Tr. 294). It was noted that her respirations were unlabored. She was diagnosed with sinusitis, given a Z-pack and told to follow up with her primary care physician. (Tr. 294). Similar to Dr. Zulueta's treatment notes, none of Plaintiff's medical records assessed any limitations on her daily activities due to her COPD. Plaintiff was advised to quit smoking, but she continues to smoke a half pack of cigarettes per day. (Tr.

31, 36).

Finally, the ALJ indirectly attacked the consistency of Dr. Zulueta's opinion with other record evidence, specifically Plaintiff's own testimony. (Tr. 16). Plaintiff testified that she is unable to work due to respiratory problems and her nerves. (Tr. 29). Plaintiff stated that her COPD makes her "smother" and her nerves make her "real shaky and ... aggravated." (Tr. 30, 32). Despite her allegations of disabling pain, the ALJ noted that Plaintiff has not received consistent treatment for her respiratory impairments and has never received mental health treatment, such as counseling, for her anxiety. (Tr. 17). Plaintiff testified that she currently does not receive any treatment for her COPD besides using an occasional inhaler when she gets sick, about once a year. (Tr. 30). Plaintiff also testified that Xanax helps calm her down. Furthermore, Plaintiff's admitted daily activities were not limited to the extent one would expect given her complaints of disabling pain. (Tr. 17). Plaintiff testified that she drives once a week, does many household chores, cooks, grocery shops, takes care of a dog and fish and spends time with her immediate and extended family. (Tr. 33-34, 111-115). For all of these reasons, substantial evidence supports the ALJ's determination to give little weight to the opinion of Dr. Zulueta.

### 2. The ALJ Did Not Fail to Consider the Combined Effects of Plaintiff's Impairments

Plaintiff argues the ALJ failed to consider the combined effect of her impairments. However, an examination of the ALJ's decision refutes this argument. The Commissioner must "consider the combined effect of all [the individual's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If [the Commissioner] find[s] a medically severe combination of impairments, the combined

impact of the impairments will be considered throughout the disability determination process." 20 C.F.R. §§ 404.1523; 416.923. ALJ York considered all of Plaintiff's severe impairments, and Plaintiff's RFC reflects a consideration of their combined effects. (Tr. 15-17). The ALJ individually addressed Plaintiff's COPD and other respiratory issues and her generalized anxiety disorder, referencing the medical records pertinent to each condition discussed. (Tr. 16-17). The ALJ's "individual discussion of multiple impairments does not imply that [s]he failed to consider the effect of the impairments in combination." *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (quoting *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)).

Moreover, Plaintiff does not provide the Court with any rationale to support her argument. Rather, Plaintiff relies on conclusory statements, telling the Court that "[i]t is clear from the medical evidence within the records that Plaintiff is severely impaired from her mental difficulties." (Doc. #9-2 at 4). Despite this supposed abundance of record evidence, Plaintiff only cites to the physical RFC assessment completed by Dr. Zulueta. As explained above, the ALJ properly afforded no weight to this opinion as it was inconsistent with Dr. Zulueta's own treatment notes and the other substantial medical evidence of record. Furthermore, citation to only one medical report in a record that contains several hundred pages of medical records hardly supports an argument that the ALJ did not consider the combined effects of all Plaintiff's impairments.

### 3. The ALJ Properly Considered the Durational Requirement of Substantial Gainful Activity

Plaintiff contends that the ALJ erred by failing to consider the durational requirement of substantial gainful activity. Plaintiff cites *Gatliff v. Comm'r of Soc. Sec.*, 172 F.3d 690

(9th Cir. 1999) for the proposition that substantial gainful activity means more than merely the ability to find a job and physically perform the same but also requires the ability to hold the job for a significant period of time. *Id.* at 694. While the ALJ did not cite to *Gatliff*, her decision rejects Plaintiff's contention that she cannot maintain a job. Implicit in the RFC assigned to Plaintiff by the ALJ is a finding that Plaintiff is capable of maintaining employment. Moreover, the VE testified that jobs exist in significant number in the national economy that Plaintiff could perform. (Tr. 39-40).

Plaintiff does not explain why an individual with her RFC would be unable to maintain employment. Plaintiff simply states:

> The Courts have imposed a durational requirement of substantial activity [that] ... requires the ability to hold the job for a significant period of time. ... This was not considered by the ALJ, nor were the numerous exertional and non-exertional restrictions placed upon the Plaintiff due to her mental limitations. This is made clear in the medical reports herein.

(Doc. #9-2 at 5). Despite Plaintiff's contention that the medical reports make clear that the ALJ failed to consider the durational requirement of substantial gainful activity, Plaintiff fails to provide any citation to the record. Consequently, Plaintiff's conclusory argument is simply not supported by the record herein.

### 4. **Plaintiff Failed to Show That She Meets a Listing**

Plaintiff also argues that the ALJ should have found her impairments severe enough to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. However, Plaintiff failed to identify what listing(s) she believes her impairments meet or medically equal. In failing to direct this Court's attention to which listing(s) her impairments allegedly meet or medically equal, Plaintiff's argument lacks the specificity required on appeal. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th

Cir. 2006). When a plaintiff fails to offer any particularized argument to support her assertion, this Court will not "formulate arguments on the Plaintiff's behalf" or engage in an "open-ended review of the entirety of the administrative record to determine ... whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and ... whether the Commissioner sufficiently accounted for this evidence." *Id.* Rather, the Court limits its consideration to the particular points that Plaintiff appears to raise in her motion for summary judgment. *See id.*

Plaintiff asserts that "[i]t is clear from the record that [she] has a severe generalized anxiety disorder and suffers from numerous serious problems, both physical and emotional." (Doc. #9-2, at 4). In her decision, the ALJ evaluated Plaintiff's generalized anxiety disorder under Listing 12.06 (Anxiety Related Disorders) and concluded that Plaintiff's condition did not meet or medically equal the necessary criteria under that listing. (Tr. 15). Therefore, it appears that Plaintiff believes the ALJ erred in finding that Plaintiff's generalized anxiety disorder did not meet or medically equal the necessary criteria under Listing 12.06.

The required level of severity for 12.06 disorders is met when both paragraphs "A" and "B" criteria are satisfied, or when both paragraphs "A" and "C" criteria are satisfied. Therefore, if Plaintiff cannot meet either paragraph "B" or "C" criteria, her anxiety disorder would not qualify under the 12.06 Listing. Paragraph "B" requires at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.06. Paragraph "C" requires a

complete inability to function independently outside the area of one's home. *Id.*

The ALJ found that Plaintiff did not meet or medically equal the paragraph "B" criteria because her mental impairment imposes only a mild limitation in her ability to maintain the activities of daily living and a moderate limitation in her ability to maintain social functioning and concentration, persistence and pace. Additionally, the ALJ found no evidence of decompensation in work or work-like settings. (Tr. 15). Finally, she noted that Plaintiff failed to present any evidence of paragraph "C" criteria. (Tr. 15).

In support of her argument, Plaintiff cites to only one medical report in the record–a 2005 report prepared by one-time psychological examiner Dr. Jeanne Bennett, apparently in connection with a prior application for benefits. (Tr. 148). Despite Plaintiff's assertion, this report does not contradict the ALJ's opinion that Plaintiff's mental impairment is not severe enough to meet or medically equal the criteria under Listing 12.06. Dr. Bennett found that Plaintiff's mental impairment (1) did not affect her capacity to understand, remember and carry out instruction towards the performance of simple repetitive tasks; (2) only slightly limited her capacity to respond appropriately to supervision, coworkers, and work pressures in a work setting; and (3) moderately limited her ability tolerate stress and pressure of day-to-day employment and sustain attention and concentration towards the performance of simple repetitive tasks. (Tr. 152). None of the restrictions assessed by Dr. Bennett satisfy the criteria of paragraphs "B" or "C" under 12.06. Furthermore, a more recent 2007 report prepared by one-time psychological examiner Dr. Greg Lynch noted similar findings, with no more than moderate limitations on Plaintiff's abilities. (Tr. 402).

Consequently, given the lack of objective medical evidence that would support Plaintiff's allegation that her impairments meet or medially equal a listing, the Court finds

13

the ALJ's determination that Plaintiff's impairments do not meet or medically equal a listed impairment is supported by substantial evidence.

## III. CONCLUSION

Therefore, for the reasons stated herein, the Court concludes that the ALJ's RFC determination and her finding that Plaintiff was not disabled for purposes of the Social Security Act is supported by substantial evidence. Although the record contains differing opinions as to the extent of Plaintiff's exertional and non-exertional limitations, the Court finds that the ALJ properly performed her duty as trier of fact in resolving the conflicts in evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Accordingly, for the reasons stated,

**IT IS ORDERED as follows:**

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. #10) is hereby **GRANTED**; and

4. A separate Judgment affirming this matter will be entered contemporaneously herewith.

This 21st day of March, 2011.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Lexington\5-10-168 Henson MOO.wpd